DAWSON COUNTY IRRIGATION COMPANY, APPELLANT, V.
LEONARD J. STUART ET AL., APPELLEES.

6 N. W. (2d) 602

FILED NOVEMBER 27, 1942. No. 31441.

*Lyman M. Stuckey,* for appellant.

*Cook & Cook, contra.*

Heard before SIMMONS, C. J., EBERLY, CARTER, MESS-MORE and YEAGER, JJ.

YEAGER, J.

This is an action in equity by Dawson County Irrigation Company, a corporation, plaintiff and appellant, against Leonard J. Stuart and Winifred S. Stuart, husband and wife, Wilfried V. Stuart and Mary T. Stuart, husband and wife, Charles Francis Stuart and ——— C. Stuart, first real name unknown, husband and wife, and Helen Stuart and ——— H. Stuart, first real name unknown, wife and husband, defendants and appellees. On the pleadings, in form and substance, the plaintiff sought to have title quieted to an easement for an irrigation canal extending in an irregular course and direction across the south one-half of section thirty-six (36), township ten (10) north, range twenty-one (21) west of the sixth P. M., in Dawson county, Nebraska, and the defendants denied the right of the plaintiff to the easement claimed, and affirmatively claimed damages for the value of the land actually taken for the irrigation canal, and for damages to adjacent lands not taken but the value of which was reduced by reason of the construction of the canal. Defendant Leonard J. Stuart is the owner of two-fifths of the land, and defendants Wilfried V. Stuart, Charles Francis Stuart and Helen Stuart are each owners of one-fifth thereof.

The case was tried to the court and decree was entered quieting title in the plaintiff or its successors in interest so long as the easement shall be used for the irrigation purposes of the irrigation system, and for ten years after abandonment of its use in case it shall be abandoned. In case of abandonment for ten years the easement shall revert to the then owners of the land.

As a part of the decree the defendants were awarded judgment against the plaintiff in the sum of $785 for the taking and damage to land.

The defendants have not appealed, but the plaintiff has appealed from the judgment rendered against it for damages.

Plaintiff bases its right to have the judgment rendered against it reversed on the proposition that the statute of limitations bars a right of recovery of damages for taking and for reduction of value of lands not taken. The theory of the defendants is that the action of the plaintiff being in equity, and though it has a prescriptive right to the easement which it has a right to have enforced, the court may require payment of damages as a condition of quieting title to the easement. They contend that this condition may be enforced under the maxim of equity that he who comes into equity must do equity.

The obvious effect of this contention is that a court of equity solely and alone under the authority of this maxim, without the interposition of other considerations or conditions, has power to suspend the operation of a statute of limitations against an action at law.

The theory on which plaintiff presented its case and obtained the decree favorable to it was that a prescriptive right had ripened in its favor, that is, that it had possession of the land involved for ten years or more before the commencement of the action under factual and legal conditions, which entitled it to have title to an easement declared therein by decree of court.

An easement by prescription cannot be acquired except by open, notorious, exclusive and adverse user for ten years. *Roe v. Howard County,* 75 Neb. 448, 106 N. W. 587; *Agnew v. City of Pawnee City,* 79 Neb. 603, 113 N. W. 236; *Dunbar v. O'Brien,* 117 Neb. 245, 220 N. W. 278, 58 A. L. R. 1033; *Onstott v. Airdale Ranch and Cattle Co.,* 129 Neb. 54, 260 N. W. 556.

Whether or not this portion of the decree was supported by sufficient evidence may not be considered here. From it, as has been pointed out, no appeal was taken, hence, it, to that extent, becomes the law of the case and is *res adjudicata* as to that issue in another action between the same parties, or as to the same issue raised by answer in the nature of a cross-action in the same action. *Wilch v. Phelps,* 16 Neb. 515, 20 N. W. 840; *Morgan v. Mitchell,* 52 Neb. 667,

72 N. W. 1055; *Wittenberg v. Mollyneaux,* 60 Neb. 583, 83 N. W. 842; *State v. Savage,* 64 Neb. 684, 702, 90 N. W. 898, 91 N. W. 557; *Shepard v. City of Friend,* 141 Neb. 866, 5 N. W. (2d) 108.

The court in its decree found that plaintiff's possession began ten years or more before the commencement and, *a fortiori,* found that the right of defendants or their predecessors in interest to damage accrued with the entry into possession under conditions which would ripen into an easement with the lapse of time.

It must follow then that the right of action claimed by defendants for damages, since no continuing damage was claimed but only for taking and depreciation in value, accrued more than ten years before the filing of the answer. It also follows that the right of action of the defendants or their predecessors in interest had expired long before the commencement of this action and the filing of the answer. See section 20-207, Comp. St. 1929; also section 20-212, Comp. St. 1929.

In support of their contention that they have a right to their damage, the action of plaintiff being in equity, notwithstanding at law their action was barred by the statute of limitations, the defendants cite *Hobson v. Huxtable,* 79 Neb. 340, 116 N. W. 278; *Bank of Alma v. Hamilton,* 85 Neb. 441, 123 N. W. 458; *Pettit v. Louis,* 88 Neb. 496, 129 N. W. 1005; *Bell v. Dingwell,* 91 Neb. 699, 136 N. W. 1128; *Love v. Park,* 95 Neb. 729, 146 N. W. 941; *Wiseman v. Guernsey,* 107 Neb. 647, 187 N. W. 55.

In the first paragraph of the syllabus in *Bank of Alma v. Hamilton, supra,* the rule is laid down as follows: "If a litigant asks affirmative equitable relief, he will be required to do justice himself with regard to any equity arising out of the subject-matter of the action in favor of his adversary, and the statute of limitations is no bar to the imposition of such conditions."

An examination of the opinion discloses that the action was to quiet title in plaintiff as mortgagee in possession. The defendant claimed an equity in the land which plain-

tiff insisted was barred by the statute of limitations. It will be seen that this was a situation where there were conflicting equitable interests in and to the same subject-matter.

In the eighth paragraph of the syllabus in *Wiseman v. Guernsey, supra,* it is stated: "Where a party comes into a court of equity asking affirmative equitable relief, he may be required to do equity with regard to the subject-matter of the action, and the statute of limitations is not available to him as a defense against the imposition of such requirements."

The action here was to quiet title by an adopted child to lands which had belonged to the adopting parent, who was deceased at the commencement of the action, against the heirs of one who claimed the right to take from the deceased adopting parent under an agreement for adoption.

From an examination of the opinion it is apparent that the syllabus is but the statement of an abstract principle. No such question was decided by the court. In the opinion appears the following:

"Plaintiff pleads the statute of limitations as a bar to any claim of interest by the defendants to the property in question. The defendants, however, did not bring this action to establish a constructive trust in the property, but have set up such a trust in defense of the plaintiff's action. The plaintiff claims under the agreement in the articles of adoption by which she was made an heir of the estate. The defendants' answer asserts, by way of defense, that the plaintiff is a trustee *ex maleficio.* The effect of that defense is to define and limit that title interest which the plaintiff claims. The statute of limitations would not be available to the plaintiff to prevent such a defense. * * *

"Though 19 years have elapsed since the death of Anthony Shovel, it appears that Susan Shovel, his widow, is still living and had become entitled to a dower interest and possessory rights in the property. During her lifetime there was no urgent reason why the matter of the interests of the plaintiff and the defendants should be settled. There is no suggestion that the plaintiff ever repudiated the trust or de-

nied that James Shovel or his heirs were entitled to an interest in the estate, until the commencement of this suit. It was not until that time that the defendants became apprised of the fact that she was attempting to exclude them from the inheritance and that she did not intend to carry out the implied promise contained in the adoption agreement. It is not suggested that the defendants were aware of her attitude prior to that time, nor that they were guilty of any laches in failing to assert their rights. The statute of limitations does not begin to run against the rights of the beneficiaries of such a constructive trust until they are apprised of the fact that the trustee did not intend to carry out the provisions of the trust. In this case, they were not apprised of that fact until the trustee repudiated it. The statute of limitations, therefore, had not run against the claim of the defendants."

We do not discuss the other cited cases since they are not in point from the standpoint of either fact or law.

It is true that under our Code the chancery practice has been so enlarged that an answer in the nature of a cross-petition may properly seek affirmative relief beyond that which is merely defensive, and that such relief sought need not necessarily be based on equitable grounds. *Armstrong v. Mayer*, 69 Neb. 187, 95 N. W. 51. However, the matters set up in such answer must be germane to the original suit.

No decision of this court has been found which passes upon the question of whether or not the claim of defendants here for damages is germane to the subject-matter of plaintiff's cause of action. Reason supports the view, and there is authority sustaining it, that the two are not germane. 51 C. J. 237, sec. 198.

The right to title by prescription is a right which has come into being by lapse of time under conditions which have been fulfilled. If it exists at all, every incident of the right has ripened before the commencement of the action to quiet title based upon the right. Moreover, in an action at law for ejectment by another from the lands held, holding by prescriptive right would be available as a defense and it

need not, agreeable to good authority, even be pleaded specially. It may be proved under a general denial. 1 Am. Jur. 924, sec. 235. Furthermore, the action to quiet title is an action *in rem* and the action for damages is *in personam,* each pertaining to entirely different subject-matter.

There is another convincing reason why defendants may not have their claim for damages in this action. The reason inheres in the maxim of equity that "Equity follows the law." This maxim, in 30 C. J. S. 503, sec. 103, is explained generally as follows: "In a broad sense the maxim means that equity follows the law to the extent of obeying it and conforming to its general rules and policies whether contained in the common or statute law." Again, as pointed out in 30 C. J. S. 503, sec. 103, "The maxim is strictly applicable whenever the rights of the parties are clearly defined and established by law, especially when defined and established by constitutional or statutory provisions."

This court, following the principles thus announced, in a case not similar as to facts but comparable in principle, stated: "When it is determined that the fund is an asset of the bank in the hands of the receiver, a court of equity must follow the banking law specifically dealing with it as such." *Jorgenson v. Department of Banking,* 136 Neb. 1, 284 N. W. 747.

In the case of *Alexander v. Shaffer,* 38 Neb. 812, 57 N. W. 541, the defendant set up in his answer a claimed lien obtained by reason of purchase of tax certificates on which he had not obtained tax deed, nor had he foreclosed his lien within five years which was the statutory period within which he was required to take a tax deed or foreclose the lien. Demurrer to the answer was sustained. The court said:

"It seems, therefore, established by the statute and by the later decisions of this court that the limitation fixed in the revenue law is not merely a limitation as to the right of action, but it is a limitation upon the duration of the lien itself, and that upon the expiration of the period it is not merely the remedy to enforce the lien which expired, but the lien itself is extinguished absolutely.

"The maxim that 'He who seeks equity must do equity' has never been so applied as to justify a court in imposing arbitrary conditions in order to carry out what, in the individual opinion of the chancellor, would amount to substantial justice between the parties. The rule only requires the plaintiff to do 'equity;' that is, to do what upon established legal principles he should be required to do. It has sometimes been applied in cases where the defendant was not in a position to affirmatively seek relief himself, but the vast preponderance of authority is that the maxim should never be applied so as to require that the plaintiff should perform an act not devolved upon him by established legal or equitable principles."

The claim of defendants for damages having been barred by the appropriate statute of limitations, the maxim "Equity follows the law" prevents its assertion in the answer in this case.

The decree of the district court to the extent that it awarded judgment in favor of the defendants is reversed and the claim of the said defendants is dismissed. Otherwise the decree is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.

The following opinion on motion for rehearing was filed March 19, 1943.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

Upon a rehearing in this case we have concluded that the judgment of the trial court should have been affirmed.

The theory of plaintiff's suit is an action in equity to quiet title (Comp. St. 1929, sec. 76-401) to an easement in lands for an irrigation ditch over defendants' farm by reason of a prescriptive right (Comp. St. 1929, sec. 20-202).

Defendants by answer make general denial, and admit that plaintiff constructed an irrigation ditch over defendants' lands in 1930, but allege that the then owner (now deceased) was in California at the time and without knowledge of its construction; that upon her return negotiations were had with plaintiff's officers as to damages suffered, but no agreement was reached and nothing has been paid therefor. Defendants pray that as a condition to granting plaintiff equitable relief just compensation be awarded them for the land taken and damages resulting.

A search of the record discloses no evidence supporting the plaintiff's theory of prescriptive title as claimed in the petition. The evidence is that plaintiff constructed the ditch across defendants' lands by permission of the tenant who agreed to give plaintiff the right of way, but that the owner was in California at the time and without knowledge of its construction; that upon her return plaintiff's officers negotiated with her for settlement, but none was reached and the damages suffered were never paid by the plaintiff.

It must be conceded that a tenant would ordinarily have no legal right to consent to the appropriation either with or without payment of damages. See 29 C. J. S. 1123, sec. 206; 20 C. J. 867; *Propst v. Cass County,* 51 Neb. 736, 71 N. W. 748. There is no evidence that the tenant had such authority. Possession therefore was taken under a void agreement and not under any claim of continuous possession under claim of ownership for the statutory period of ten years.

The decree of the trial court quiets the title to the easement in plaintiff, not on the basis of a prescriptive right as claimed in the petition, but on the theory of an equitable

enforcement of the statutory condemnation law which had not been complied with by the plaintiff in its construction of the ditch upon and over defendants' lands, as claimed by defendants in their answer.

No appeal has been taken by either plaintiff or defendants from this part of the decree. To that extent it becomes the law of the case and is *res adjudicata* as to the same issues raised by the answer. See *Shepard v. City of Friend,* 141 Neb. 866, 5 N. W. (2d) 108; 34 C. J. 742. The appeal comes to this court solely on the question of damages awarded as prayed in defendants' answer.

"Eminent domain * * * is the right of the nation or the state, or of those to whom the power has been lawfully delegated, to condemn private property for public use, and to appropriate the ownership and possession of such property for such use upon paying the owner a due compensation to be ascertained according to law." 29 C. J. S. 776, sec. 1.

Our applicable condemnation law (Comp. St. 1929, ch. 46, art. 6, and ch. 74, art. 3) and constitutional provision (Const. art. I, sec. 21) against taking and damaging private property for public use "without just compensation therefor" forcibly imply that all damages must be paid; in the one case, to the county judge before the right to entry arises, and in the other it is self-executing. An answer praying for payment of just compensation as a condition of relief quieting title in plaintiff to lands taken and damaged for public use under the power of eminent domain, not exercised as the statute requires, is germane to the original action as it would be in an original proceeding for statutory condemnation.

In *Kime v. Cass County,* 71 Neb. 677, 99 N. W. 546, affirmed in 71 Neb. 680, 101 N. W. 2, involving comparable facts and circumstances, this court said: "No damages were appraised, or provision made for their payment, before or at the time of the attempted establishment of the alleged public road in controversy. Under the Constitution * * * such omission defeated the alleged right to appropriate the land to a public use. * * * If the legislature could

rightly require of the landowner one affirmative and initiatory act, as a condition precedent to obtaining damages, they might require of him any other, or a series of acts which might be difficult or onerous or, in some circumstances, impossible of performance, and so the constitutional guaranty might thus be seriously impaired or wholly frittered away. We are of opinion that the spirit, if not the letter, of the Constitution requires that the public seeking to appropriate private property to its use should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless continued for the statutory period of limitations, be regarded as a waiver of his rights. The second matter determined by the opinion, and about which the record leaves no room for doubt, is that the public have not occupied the lands in suit, continuously, for so long a time as is required by the statute to acquire, by that means, a prescriptive title to the alleged easement." See, also, *Johnson v. Peterson*, 85 Neb. 83, 122 N. W. 683; *Weinel v. Box Butte County*, 108 Neb. 293, 187 N. W. 939; *Lee v. Eyerly*, 109 Neb. 539, 191 N. W. 699.

Where a party having a lawful right to enter and take lands by eminent domain for public use by paying just compensation therefor does not enter in conformity to law, but the owner waives this feature and treats it as if the law had been followed, with only the question of compensation to be settled, then the law of compensation under eminent domain applies. It is just as if condemnation proceedings were begun and not yet completed. In such cases the action for just compensation is not barred except by adverse possession of the land taken for ten years, the requisite period to establish a title by prescription. *Schilling v. Carl Township*, 60 N. Dak. 480, 235 N. W. 126; *Oklahoma City v. Wells*, 185 Okla. 369, 91 Pac. (2d) 1077, 123 A. L. R. 662; 2 Lewis, Eminent Domain (3d ed.) sec. 967. Compelling

reasons for these rules of law are found in these authorities and in *Aylmore v. City of Seattle,* 100 Wash. 515, 171 Pac. 659, L. R. A. 1918E 127. They are controlling in the case at bar, and our former opinion, *Dawson County Irrigation Co. v. Stuart, ante,* p. 428, 6 N. W. (2d) 602, is hereby vacated and set aside, and the judgment of the trial court awarding defendants a judgment for $785 against plaintiff for land taken and damaged is hereby

AFFIRMED.